(*Criminal Court of Cook County.*)

## People of the State of Illinois
### vs.
### E. A. Davis, et al.

(February 11, 1898.)

1. CONSPIRACY—WHAT CONSTITUTES. To constitute a violation of section 46 of the Criminal Code against conspiracy there must be an intent to "wrongfully and wickedly" injure the business,

etc., of another. A fraudulent or malicious intent to injure is not enough. There must also be a purpose to carry into execution such intent.

2. INDICTMENT—SUFFICIENCY OF IN CONSPIRACY. An indictment for conspiracy in the words of the statute is sufficient. But if the facts constituting the conspiracy are alleged, they must show a fraudulent and malicious intent "wrongfully and wickedly" to injure, etc.

3. CONSPIRACY—"WRONGFULLY AND WICKEDLY"—MEANING OF. The words "wrongfully and wickedly" in the conspiracy statute are to be understood as meaning the use of means in themselves "wrongful and wicked," independently of combination.

4. SAME. The entering into of an agreement to use "wrongful and wicked" means to injure another does not show an intent to "wrongfully and wickedly" injure within the meaning of the conspiracy statute. There must be a wrongful and wicked intent to injure irrespective of the agreement.

5. CRIMINAL CONSPIRACY—MUST BE CIVIL INJURY. Where the defendants, members of a labor union, cause an employer to discharge a non-union employee, by threats to cause other employees to quit the service of such employer, this does not constitute a criminal conspiracy unless such action was an invasion of the civil rights of the non-union employee.

6. SAME. In such a case, in the absence of force, falsehood or any other act of itself unlawful, the non-union employee has no cause of action against the members of the union. *Allen v. Flood*, (1898) App. Cas. 1, followed.

7. ACTIONS—MOTIVES. The existence of a bad motive will not convert an act which is not of itself illegal into a civil wrong.

Motion to quash indictment for conspiracy. Heard before Judge Frank Baker.

*F. L. Barnett,* assistant state's attorney for the people.
*Davidson & Trumbull,* of counsel.
*John F.* and *Henry C. Geeting,* for defendants.

BAKER, J.—

This is a motion to quash an indictment against four defendants, which is found under and intended to charge a violation of the following provisions of section 46 of the criminal code: "If any two or more persons conspire or agree together with the fraudulent or malicious intent wrongfully and wickedly to injure the person, character, business or employment or

property of another  *  *  *  they shall be deemed guilty
of a conspiracy, and every such offender, whether as individ-
uals, or as officers of any society or organization, and every
person convicted of conspiracy at common law shall be im-
prisoned in the penitentiary not exceeding five years, or fined
not exceeding five thousand dollars, or both."

The first count of the indictment charges that the defend-
ants were members of a certain union, viz., the Hoisting En-
gineers' Association; that Charles and Dennis were in the em-
ploy of the Thomas Elevator Company; that the defendants
did, unlawfully, etc., conspire and agree together with the
fraudulent and malicious intent to wrongfully and wickedly
injure the business of Charles and Dennis by unlawfully, etc.,
demanding of said elevator company the discharge of Charles
and Dennis for the reason to be represented to said elevator
company by the defendants; that Charles and Dennis were
not members of said association, and then to "call off" certain
engineers in the employ of said elevator company who were
members of said association, if said demand was not complied
with "for the purpose then and there of stopping the work of
said Thomas Elevator Company, and thus throw said Charles
and Dennis out of their employment." It then avers the exe-
cution of said agreement, the demand, refusal, "calling off"
. of the union engineers by defendants, and avers that thereby
the work of said elevator company was stopped, and by reason
thereof said Charles and Dennis discharged from their em-
ployment.

The second and third counts are identical with the first,
save that the intent alleged in the second is to injure the "em-
ployment," in the third the "business and employment" of
Charles and Dennis. It is not alleged that any contract of
employment for any period existed either between the elevator
company and the union engineers, or between the company
and Charles and Dennis.

To constitute an offense under the provisions of section 46
above quoted, there must be the agreement, with the fraudu-
lent or malicious intent "wrongfully and wickedly" to injure
the business or employment, etc., of another. The agreement

with the fraudulent or malicious intent to injure is not enough. The agreement must include the purpose to carry into execution the fraudulent and malicious intent to injure "wrongfully and wickedly," that is, by the use of wrongful and wicked means. It may be that an indictment in the words of the statute charging that the defendants did conspire and agree together with the fraudulent and malicious intent wrongfully and wickedly to injure Charles and Dennis in their employment would be sufficient, but in this indictment there is a precise statement of the means agreed upon by the defendants to be used to carry into effect their alleged malicious intent to injure Charles and Dennis in their employment; and hence, if the means so alleged to have been agreed upon are in law wrongful and wicked, the indictment well and sufficiently charges a conspiracy under the statute. And, on the other hand, if the means so set out in the indictment are not wrongful and wicked, the indictment cannot be held to well or sufficient charge a conspiracy under the statute, for, if the means which the indictment alleged were agreed upon to be used are not wrongful and wicked, in no just sense can the indictment be held to charge a conspiracy and agreement by the defendants with the fraudulent and malicious intent, "wrongfully and wickedly" to injure Charles and Dennis. The words "wrongfully and wickedly" in the statute are to be understood as meaning the use of means in themselves "wrongful and wicked" independently of combination. We cannot say that the means are wrongful and wicked, because of the agreement to use such means to carry out a malicious intent to injure. The thing prohibited is an agreement with the malicious intent wrongfully and wickedly to injure. Whether such intent exists depends upon the means agreed upon to be used to carry out the malicious intent to injure. To say that the means agreed upon are wrongful and wicked because of the agreement to use such means to carry out the malicious intent to injure, amounts to saying that the means received a character of wrongfulness and wickedness from the agreement to use such means in a manner which depends for its own wrongfulness and wickedness upon the means so agreed upon.

The means set out in the indictment as the means agreed upon by the defendants to be used to carry out their malicious intent to injure Charles and Dennis in their employment are, in substance, that the defendants agreed together to demand the discharge of Charles and Dennis by the elevator company for the reason to be stated to said company, that Charles and Dennis were not members of the Hoisting Engineers' Association, of which the defendants were members, and certain engineers in the employ of said company were also members; and to notify said company that in case of refusal to discharge Charles and Dennis, the defendants would "call off" from the employment of the elevator company the members of said association "for the purpose of then and there stopping the work of said elevator company and thus throw said Charles and Dennis out of their employment." There are cases which hold that a combination and agreement to use such means as this indictment avers the defendants agreed together to use, is an indictable conspiracy. At one time the associations, which in our day are known as trade unions, or labor organizations. would have been regarded as against public policy, as conspiracies in restraint of trade. I shall attempt no review of the authorities, no history of legislation either here or in England. It is sufficient to say that there has been a most marked change in public policy towards such organizations. There and here such organizations are now recognized by law. The acts in question are not criminal independently of combination, but acts may be wrongful and wicked, though not criminal. Acts may be wrongful in morals, or wrongful in law. It is only with the question whether the acts in question are wrongful in law that we are concerned.

I shall not attempt to define or limit the words "wrongfully or wickedly" as used in the statute. It is sufficient to say that in cases like this where there is no suggestion of fraud, immorality, injury to the public, or violation of contract, there must at least be a civil wrong, an invasion of the civil right of another, carrying with it the liability to repair the natural and direct consequences, where injury results to the person whose rights are infringed or invaded.

If the acts which the indictment alleges the defendants agreed to do, to compass the discharge of Charles and Dennis with the malicious intent to injure them, constitute an actionable civil wrong, they must be regarded as wrongful and wicked, in law, and if they do not amount to a civil wrong and are not criminal, they cannot be regarded as wrongful and wicked in law. Upon the question whether such acts, if done maliciously, constitute a civil wrong, we have no authorities in Illinois, and I shall refer to but a single case, the case of *Allen v. Flood,* decided by the House of Lords December 14, 1897, 42 Solicitor' Journal, 149.[1] In that case the act complained of by plaintiffs was the act of Allen, the local delegate of a union, in demanding the discharge of plaintiffs by their employer, an iron company, and causing their discharge by giving notice to the iron company that unless the company discharged the plaintiffs, he would call out from its employ all the members of the union of which he was a delegate. And it was alleged and the jury found that Allen acted maliciously with intent to injure the plaintiffs. The plaintiffs had judgment, and that judgment was affirmed in the Court of Appeals, but reversed by the House of Lords. In the course of his opinion Lord Watson said: "The existence of a bad motive in the case of an act, which is not of itself illegal, will not convert that act into a civil wrong. A wrongful act, done knowingly, with a view to its injurious consequences may, in the sense of law, be malicious, but such malice derives its essential character from the circumstances that the act done constitutes a violation of law." Lord Herschel, in the course of his judgment, said: "If they (the members of a union) resort to unlawful acts, they may be indicted or sued. If they do not resort to unlawful acts, they are entitled to further their interests in the manner which seems to them best and most likely to be efficient. * * * I do not doubt that every one has a right to pursue his trade or employment without 'molestation' or 'obstruction,' if those terms are used to imply some act of itself wrongful. This is only a branch of a much wider proposition,

---

[1] App. Cas. (1898) 1.—Ed.

namely, that every one has a right to do any lawful act ·he pleases without molestation or obstruction. If it be intended to assert that an act not otherwise wrongful, always becomes so if it interferes with another's trade or employment, and needs to be excused or justified, I say that such a proposition, in my opinion, has no solid foundation in reason to rest upon. A man's right not to work or not to pursue a particular trade or calling, or to determine when or where or with whom he will work, is, in law, a right of precisely the same nature and entitled to just the same protection as a man's right to trade or work. They are but examples of that wider right, of which I have already spoken. The wider right embraces also the right of free speech. A man has a right to say what he pleases. to induce, to advise, to exhort, to command, provided he does not slander or deceive, or commit any other of the wrongs known to the law of which speech may be the medium. Unless he is thus shown to have abused his right, why is he to be called upon to excuse or justify himself because his words may interfere with someone else in his calling?'' The legal principle settled by the case is, that the existence of a bad motive will not convert an act which is not of itself illegal into a civil wrong.

The test laid down, to determine what acts of members of trades unions of the nature here under consideration are innocent and what wrongful, is that, if the members of a union resort to unlawful acts, they may be indicted or sued. If they do not resort to unlawful acts, they are entitled to further their interests in the manner which seems to them best and most likely to be effectual, and both are to my mind correct and salutary rules. The latter is, after all, but a restatement in different words of the rule laid down by Chief Justice Shaw, in 1842, in the case of *Commonwealth v. Hunt,* 4 Metcalf (Mass.) 134, when he said, ''the legality of such an association (a trades union) will therefore depend upon the means to be used for its accomplishment. If it is to be carried into effect by fair or honorable and lawful means, it is to say the least, innocent; if by falsehood or force, it may be stamped *as an illegal* conspiracy.''

There is no suggestion, ev, ‾ the indictment, that the agreement into which it is allegeu the defendants entered, contemplated the use of force, falsehood or any other act of itself unlawful, and in my opinion it follows that the acts which the indictment alleges the defendants agreed to do, the means they agreed to use cannot be held in law wrongful or wicked.

The views here expressed find confirmation in the following provision of our criminal code, section 158: "If any two or more persons shall combine for the purpose of depriving the owner or possessor of property of its lawful use and management, or of preventing, by threats, suggestions of danger or any unlawful means, any person from being employed by, or obtaining employment from any such owner or possessor of property on such terms as the parties concerned may agree upon, such persons so offending shall be fined not exceeding $500.00, or confined in the county jail not exceeding six months," for under well settled rules of construction it is but reasonable to infer that the legislature, in adopting section 158 as a section of the act of which section 46 was another section, intended to embody in section 158 all matter in relation to interference by combination and agreement between employee and employer, between capital and industry, which it was thought proper to make the subject of a special criminal law.

The case involves questions of great interest, and has been fully and most ably argued. It is to be regretted that the judgment about to be pronounced cannot be reviewed by our supreme court. That judgment is that the motion to quash the indictment must be sustained.

NOTE.—See in addition to *Allen v. Flood, supra,* the later cases of *Quinn v. Leathem,* (1901) App. Cas. 495; *South Wales Miners' Federation v. Glamorgan Coal Co., Ltd.,* (1905) App. Cas. 239. See, also, in general, *London Guarantee & Accident Co. v. Horn,* 206 Ill. 493; *Thomas v. Cincinnati, etc., Ry. Co.,* 62 Fed. 803; *Moore v. Bricklayers' Union,* 23 Week. Cin. L. B. 48, 10 Ohio Dec. Rep. 665; *Temperton v. Russell,* 1 Q. B. 715; *Carew v. Rutherford,* 106 Mass. 1; *Toledo, etc., Ry. Co. v. Penn. Co.,* 54 Fed. 730; *Steamship Co. v. McKenna,* 30 Fed. 48.—Ed.